Green, J.
delivered the opinion of the court.
This bill is filed by the widow, and infant children, by their guardian, of Samuel Odell, deceased, against the administrator Bearden, charging that through fraud or negligence he had failed to collect debts due the estate, and particularly the sum of 660 dollars which Samuel Odell in bis lifetime had paid to William Odell upon a verbal contract for the purchase of a tract of land, and which said administrator was bound to have recovered back from the said William.
William Odell is also made a defendant; and he denies, in his answer, that Samuel Odell ever paid him any money for the land.
The facts, from all the proof, appear to be, that in 1834 or 1835, William Odell, the father of Samuel, sent a negro girl-named Amy, to. his son Samuel’s house, where she remained about two years serving Samuel, and being treated by him as his own slave, and being understood and considered among the neighbors as his property. In the.spring of 1836, Nicholas B. Swan went to William Odell’s to see if • he' had any negroes to sell; but learned from him that he did not wish to sell any, but said his son Samuel Odell bad some to sell. He went to Samuel Odell’s and purchased from him the negro girl Amy and *130 her child for 660 dollars. Samuel had no pen and ink, and the parties went to William Odell’s, where a bill of sale was prepared, and executed by Samuel Odell in the presence of his father, the said William. These 660 dollars, Samuel Odell received from Swan, and paid to his father on the verbal contract for the land. The old man recognized it as a payment, saying at one time he had received 660 dollars in part pay for the land, — and at another time, that he-had a mind to make Samuel’s heirs pay up the balance, and take the land. Several witnesses prove that he said he had given the negro girl to Samuel, and that he had received from Samuel the 660 dollars for which the girl sold, in part payment for the land.
Upon these facts, the first question is, did the money for which the girl Amy was sold, belong to Samuel Odell.
It is contended by the defendant’s counsel, that as by the act of 1831, a gift of a slave is void unless it be in writing, the verbal gift, in this case, of the negro to Samuel Odell, communicated to him no title, and that when the girl was sold the money belonged to William Odell, and that his reception of it from Samuel was no payment on the contract for the land.
It is true this court holds that a verbal gift of a slave is utterly void, even as between donor and donee, (Neely vs. Wood, 10 Yer. -R.) but in the present case, the question is not as to the legal ownership-of the negro, but whether the money for which she sold did not belong to Samuel at the time William Odell received it. And in this view of the case, the manner in which the parties had treated the negro, the understanding they both had, that Samuel was owner, enable us to-perceive cleárly, that they both must have regarded the money,as belonging to Samuel; and so regarding it, he became in fact the owner. The payment therefore, upon the verbal contract for the land, was a reception of so much .money by William Odell, to the use of Samuel. This court has held, that money so deposited may be recovered in an action of assumpsit. This is a legitimate consequence of the doctrine of this court in relation to the statute of frauds. We hold that a verbal contract for the sale of land, is utterly void, and can be made binding by no act of part performance.
*131 There can be no obligation on the part of either party to go on with the contract; and if money has been advanced, it will be considered as a mere deposit to t'he use of the party making it.
We think therefore the plaintiffs are entitled to a decree against both defendants for the 660 dollars, paid for the land, and interest thereon.
Affirm the decree.